**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 18, 2025**

# In the Court of Appeals of Georgia

A25A1600. WILLIAMS v. THE STATE.

PADGETT, Judge.

Following a jury trial, Jerico Williams was found guilty of armed robbery, two counts of aggravated assault, false imprisonment, and two counts of possession of a firearm during the commission of a crime. Williams appeals from the trial court's denial of his motion for new trial, as amended. In a single enumeration of error, Williams claims that he received ineffective assistance of trial counsel. For the reasons that follow, we affirm in part, vacate in part, and remand with direction to the trial court to enter an order consistent with this opinion.

Viewed in the light most favorable to the jury's verdict,[1] the evidence revealed that Williams, accompanied by two other men and a female driver, committed an armed robbery of a retail store on June 4, 2023. Williams entered the store, armed with a handgun, and was wearing a black hoodie with red writing. One of his accomplices wore a black hoodie and approached the cashier during the armed robbery. The third man wore a red hoodie and stood in the doorway, acting as a lookout. The female remained in the car, a rented black Ford Bronco, that had a paper drive-out license plate. The events inside of the store were captured on video.

As Williams brandished the firearm, the second accomplice grabbed the cashier when she tried to flee the situation and took money from the cash register. The three men then fled the store, got into the waiting Bronco and fled the scene. Witnesses advised law enforcement officers as to the Bronco's direction of travel and officers put out a BOLO for the Bronco, describing it as having a paper drive-out license plate. Officers also took screenshots from the surveillance video from within the store and were able to share the screenshots with other officers once the Bronco was located.

---

[1] See, e.g., *Cawthon v. State*, 350 Ga. App. 741, 741 n.1 (830 SE2d 270) (2019) (citation omitted).

Officers from an adjoining jurisdiction spotted the Bronco stopped at a traffic signal and coming from the direction of the armed robbery. Without warning to the other occupants in the car, the accomplice in the red hoodie saw the law enforcement vehicle and got out of the Bronco while it was stopped at the traffic signal but the officer did not see the man exit the car. Once the officer was able to turn around and follow the Bronco, the officer eventually activated his emergency equipment but the Bronco did not immediately stop. The Bronco took a series of turns, ending up in a cul-de-sac within a residential neighborhood. After the Bronco stopped, one of the occupants fled on foot, leaving Williams and his female accomplice in the Bronco. The officer was able to detain Williams and the female at the location where the vehicle stopped. A perimeter search resulted in the arrest of the accomplice in the red hoodie who had previously exited the vehicle at the traffic signal. The accomplice that fled from the Bronco at the time of the stop was not located. During the process of being arrested, Williams made a spontaneous statement to the arresting officer indicating that the female did not have anything to do with "whatever you are charging me with."

In the vehicle, officers located a black hoodie with red writing in the front passenger floorboard. Located on top of the hoodie was a loaded handgun. After initially securing the firearm, officers had the car towed and obtained a search warrant for the vehicle. In addition to the black hoodie with red writing and the handgun, officers found a black hoodie, face masks, debit cards belonging to Williams and the female driver, and other miscellaneous personal property. Officers also took possession of a cell phone determined to be the property of the female driver and obtained a separate search warrant for its contents.

Officers learned that the Bronco had been rented in the name of Williams' father and was due to be returned on the date of the armed robbery. The owner of the Bronco equipped the vehicle with a GPS tracking device prior to renting the vehicle to Williams' father. Review of the information captured by the GPS tracker showed the Bronco was present at the retail store at the time of the armed robbery. The accomplice who was wearing the red hoodie and the female driver both testified during Williams' trial and established that Williams had sole possession of the gun used during the armed robbery, that the armed robbery had been planned, and that Williams told the female to park the Bronco in a manner that would not reveal their

license plate to potential surveillance cameras. Additionally, text message exchanges between Williams and the female revealed that they had planned to conduct a robbery that evening to obtain the money necessary to pay for the rental vehicle.

Prior to trial, Williams passed a handwritten note to the male accomplice who eventually testified at trial. The note encouraged the accomplice to provide officers with a version of events that was untrue. The note was introduced at trial. A jury found Williams guilty of armed robbery, two counts of aggravated assault, false imprisonment, and two counts of possession of a firearm during the commission of a crime. The trial court imposed a sentence on the counts charging Williams with armed robbery, false imprisonment and two counts of possession of a firearm during the commission of a crime, finding that the remaining counts merged with the armed robbery. This appeal follows the trial court's denial of Williams' motion for new trial, as amended.

1. In his sole enumeration of error, Williams claims that his trial counsel was ineffective. Specifically, Williams claims that trial counsel did not adequately investigate the case and did not interview potential witnesses.

To establish ineffective assistance of counsel, Williams must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Roberts v. State*, 322 Ga. App. 659, 663 (3) (745 SE2d 850) (2013) (citation omitted). "[T]his burden — though not impossible to carry — is a heavy one." *Mulkey v. State*, 366 Ga. App. 427, 437 (4) (883 SE2d 173) (2023) (citation and punctuation omitted). There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance and the reasonableness of counsel's conduct is viewed from the perspective known at the time of trial and under the unique circumstances of Williams' case. *Roberts*, 322 Ga. App. at 663 (3) (citation omitted). If Williams fails to prove either of the prongs of this familiar test, we are not required to evaluate the remaining prong. *Smith v. State*, 373 Ga. App. 33, 45 (3) (907 SE2d 327) (2024) (citation omitted). In reviewing a claim of ineffective assistance of trial counsel, we give deference to the trial court's factual findings and uphold those findings on appeal unless the factual findings prove to be clearly erroneous. Id. at 46 (3). However, we review the trial court's legal conclusions de novo. Id.

Trial counsel testified as Williams' sole witness during the hearing on the amended motion for new trial. Trial counsel is an experienced lawyer, having represented clients charged with criminal offenses for over 30 years and having tried over 100 criminal jury trials to verdict. When counsel initially met with Williams, Williams alleged that he and the female driver of the Bronco were working as ride share drivers and that they met the men who actually committed the armed robbery while performing that service. Trial counsel attempted to interview the female driver and the other male accomplice who both ultimately testified for the State. Both of those individuals refused to speak with Williams' trial counsel. There was no evidence presented to suggest that there were any other potential witnesses identified by Williams who would have any relevant knowledge about Williams' claims. Williams did not testify at the hearing on the amended motion for new trial.

Georgia law is clear that when trial counsel attempts to interview potential witnesses and those witnesses refuse the request, trial counsel is not deficient merely because the witnesses refuse to be interviewed. *White v. State*, 319 Ga. 367, 390-391 (6) (a) (903 SE2d 891) (2024); *Atkinson v. State*, 301 Ga. 518, 527 (6) (i) (801 SE2d

7

833) (2017). Because Williams failed to establish deficient conduct, we need not reach the issue of prejudice. *Smith*, 373 Ga. App. at 47 (3) (citation omitted).[2]

We conclude, as did the trial court, that Williams has failed to establish that trial counsel was deficient, and thus he cannot sustain his claim that trial counsel was ineffective.

2. Although not raised by Williams, upon review of the record, the trial court's sentencing on the two counts of possession of a firearm during commission of a felony warrants our consideration. It is within this Court's discretion to review a merger error where the trial court has convicted and sentenced a defendant for a crime that should have been merged, which error thereby results in an illegal and void judgment of conviction and sentence as to that count which should have merged. See, e.g., *Dixon v. State*, 302 Ga. 691, 697 (4) (808 SE2d 696) (2017); *Ray v. State*, 359 Ga. App. 637, 641 n.19 (3) (859 SE2d 793) (2021). The unit of prosecution analysis applies because Williams was found guilty of two counts of the same crime.

---

[2] While we need not address the issue of prejudice, we note that the State's case was extremely strong, greatly diminishing any probability that additional investigation by trial counsel would have yielded a different outcome of the trial. See *Miller v. State*, 293 Ga. 638, 640 (2) (748 SE2d 893) (2013).

Here, the trial court sentenced Williams to five years, to be served consecutively, on each of the two counts of possession of a firearm during commission of a felony, with the predicate felonies being armed robbery and aggravated assault committed against the cashier of the retail establishment. However, because the predicate offenses arose from the same conduct against the same victim with the same firearm, the convictions and sentences on the two counts of possession of a firearm during commission of a felony should have merged into a single count.[3] See OCGA § 16-1-7 (a) (1) ("When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if . . . [o]ne crime is included in the other[.]"); *Brooks v. State*, 369 Ga. App. 450, 460 (4) (b) (892 SE2d 400) (2023) ("Our Supreme Court has held that '[w]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted *once* for possession of a firearm during the commission of a crime *as to every individual victim* of the crime spree as provided under OCGA § 16-11-106(b)(1) . . . .'") (citation omitted). Therefore, we must vacate the convictions entered on the two counts of

---

[3] Indeed, as noted above, the trial court properly merged the underlying two counts of aggravated assault with the armed robbery count at sentencing.

9

possession of a firearm during commission of a felony only and remand the case to the trial court for resentencing on a single count.

*Judgment affirmed in part, vacated in part, and case remanded with direction.* *Doyle, P. J., and Markle, J., concur.*